IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JERAMIA WILLIAM COOK,<br><br>Defendant. | No. CR13-2036<br><br>REPORT AND RECOMMENDATION |

On the 9th day of January 2014, this matter came on for hearing on the Motion to Suppress (docket number 12) filed by the Defendant on December 30, 2013. The Government was represented by the United States Attorney, Sean R. Berry. Defendant Jeramia William Cook appeared in person and was represented by his attorney, Max S. Wolson.

## I. PROCEDURAL HISTORY

On November 20, 2013, Defendant Jeramia William Cook was charged by Indictment with one count of being a felon in possession of a firearm and ammunition. Defendant appeared on December 2 and entered a plea of not guilty. Trial was scheduled before Chief Judge Linda R. Reade on February 3, 2014.

On December 30, 2013, Defendant timely filed the instant motion to suppress. The Government filed its resistance on January 8, 2014. Because of the pending motion to suppress, the trial was continued to March 17.

## II. RELEVANT FACTS

Defendant, who according to the indictment is a convicted felon, was charged after a handgun was found under the seat of his motor vehicle. No testimony was introduced at the instant hearing. Instead, the parties stipulated that for purposes of the motion to

suppress, the Court can assume the truth of the allegations set forth in the statement of facts contained in the Government's resistance. Accordingly, for purposes of this motion, the facts are these:

> On September 3, 2013, Waterloo Police Officer Ben Bloker responded to a weapons-related call at 607 Dearborn Avenue in Waterloo, Iowa. Officer Bloker was informed by dispatch that Wayne Nathem called the police department and reported a white male with a scruffy beard and possibly red hair had pointed a gun at him. Nathem reported that the person threw a bottle at Nathem's truck, denting the truck. Nathem also reported the person drove away in a white SUV with a license plate number 006ZCY.
>
> A records check of the reported license plate number revealed the number belonged to a white Chevy SUV registered to defendant.
>
> Officer Bloker drove to the scene and met Nathem. Nathem informed Officer Bloker that he (Nathem) had been threatened with a handgun by an unknown male during what appeared to be a traffic dispute. Nathem told Officer Bloker that the threatening individual approached Nathan's truck and threw a bottle at the driver's side of the truck. Officer Bloker observed the broken bottle in the roadway and the dent in the driver's side of the truck. Nathem informed Officer Bloker that two people witnessed the incident and gave Nathem the license plate number from the perpetrator's vehicle – a vehicle Nathem believed to be a white Toyota SUV. Nathem told Officer Bloker witnesses did not wait for police to arrive because they said they did not want get involved.
>
> While meeting with Nathem, Officer Bloker learned via radio that a white SUV with license plate number 006ZCY was located in the parking lot of a medical clinic located down the street from the scene of the incident. Officer Bloker drove to the clinic, entered the clinic, and spoke with defendant and defendant's fourteen-year-old niece, H.E. Officer Bloker observed that defendant was a white male with a scruffy beard.

When speaking with Officer Bloker, defendant denied having a gun. Defendant claimed a truck driver backed into his vehicle and then drove away. Defendant claimed he followed the truck and confronted the driver. Defendant claimed the truck driver began yelling at defendant and stated he had a gun. Defendant claimed he got scared and drove away. Defendant stated he did not call the police because he had to pick up his niece at school and go to a medical appointment. Defendant denied possessing a gun or pointing a gun at the truck driver. Defendant stated he could not have a gun because he was a felon. Defendant also claimed there was damage to the driver's side of his vehicle.

H.E. informed Officer Bloker defendant had just picked her up from school and that she was unaware of any incident prior to being picked up.

When Officer Bloker asked defendant for consent to search the white SUV, defendant said the vehicle belonged to his mother so she would have to give permission. Officer Bloker was unable to reach defendant's mother by telephone. At this point, another officer arranged to have the vehicle towed to an impound lot. Officer Bloker went outside and looked for, but did not see, any damage to the white SUV.[1]

United States' Resistance to Motion to Suppress (docket number 20) at 2-4.

Officers subsequently obtained a search warrant in state court and searched the white SUV, finding a handgun under the seat. Defendant concedes that *if* there was

---

[1] At the time of hearing, the parties agreed that the last two sentences of the statement of facts may be effectively reversed. That is, Officer Bloker appeared at the hearing and Mr. Berry made a professional statement that Bloker would testify that when the officers went out to look at Defendant's car, "there was no damage and they said let's tow it so it was a simultaneous thing; it wasn't tow it and then later look for the damage." Based on the proffered testimony, Mr. Wolson advised the Court that "we don't have an objection" to essentially reversing the order of the last two sentences in the statement of facts.

probable cause to seize his vehicle, then the search warrant was valid. Conversely, the Government concedes that *if* there was *no* probable cause to seize the vehicle, then the subsequent search warrant was invalid. That is, the parties agreed at the hearing that the validity of the search warrant will rise or fall based on the validity of the seizure of the vehicle.

## III. DISCUSSION

It is undisputed that Defendant's vehicle was "seized" when the officers decided to have it towed. The Fourth Amendment protects persons and their property against unreasonable searches and seizures. Searches conducted without a warrant are *per se* unreasonable, subject to a few well-established exceptions. *United States v. Kennedy*, 427 F.3d 1136, 1140 (8th Cir. 2005). "The so-called 'automobile exception' permits police to conduct a warrantless search of an automobile if, at the time of the search, they have probable cause to believe that the vehicle contains contraband or other evidence of a crime." *Id.* at 1140-41. If an effective search is to be made, "either the search must be made immediately without a warrant or the car itself must be seized and held without a warrant for whatever period is necessary to obtain a warrant for the search." *Chambers v. Maroney*, 399 U.S. 42, 51 (1970). Here, the officers elected to seize Defendant's car and obtain a search warrant. If officers have probable cause to believe that a vehicle may contain contraband or evidence of a crime, then the vehicle may be seized without a warrant under the "automobile exception" to the warrant requirement. *United States v. Sims*, 424 F.3d 691, 693 (8th Cir. 2005).

Accordingly, the sole issue before the Court is whether there was probable cause to seize Defendant's vehicle when the officers made a decision to tow it. "Probable cause sufficient to justify a search [or seizure] exists where, in the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Kennedy*, 427 F.3d at 1141. In determining whether probable cause

existed to support a seizure of Defendant's vehicle, the Court must "apply a common sense approach and consider all relevant circumstances." *Id.* "Probable cause does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime." *United States v. Donnelly*, 475 F.3d 946, 954 (8th Cir. 2007) (quoting *United States v. Mounts*, 248 F.3d 712, 715 (7th Cir. 2001)). The Government bears the burden of establishing that the automobile exception applies to the warrantless seizure of Defendant's vehicle. *Kennedy*, 427 F.3d at 1140.

Turning to the facts in the instant action, Wayne Nathem called the Waterloo Police Department and reported that a white male with a scruffy beard and possibly red hair had pointed a gun at him and threw a bottle at Nathem's truck, denting the truck. According to Nathem, the person drove away in a white SUV with a license plate number 006ZCY. Officer Bloker drove to the scene and met with Nathem. Nathem told Bloker that he had been threatened with a handgun during "what appeared to be a traffic dispute." Nathem also told Bloker that the threatening individual threw a bottle at Nathem's truck. Bloker observed the broken bottle in the roadway and a dent in the driver's side of the truck. While talking with Nathem, Bloker learned over the radio that a white SUV with a license plate number 006ZCY was located in the parking lot of a medical clinic located "down the street" from the scene of the incident.

Officer Bloker then drove to the clinic and went inside, and spoke with Defendant and Defendant's 14-year-old niece. A records check revealed the truck was registered to Defendant. Bloker observed that Defendant was a white male with a scruffy beard — matching the description given by Nathem. Defendant described a confrontation with a truck driver, who Defendant claimed backed into Defendant's vehicle and then drove away. Defendant admitted that he followed the truck and confronted the driver. According to Defendant, the truck driver began yelling at Defendant and stated he had a gun, so Defendant drove away. Defendant did not report the incident to police because

he had to pick up his niece at school and go to a medical appointment. Defendant denied possessing a gun or pointing a gun at the truck driver, stating that he could not have a gun because he was a felon.

When Officer Bloker asked Defendant for consent to search the white SUV, Defendant said the vehicle belonged to his mother, so she would have to give permission. A prior records check of the license plate number revealed, however, that it was assigned to a white Chevy SUV and registered to Defendant. Defendant told Bloker that there was damage to the driver's side of his vehicle. When Bloker went outside to look for damage, however, none was found.

Based on the information provided by Nathem and Defendant, Officer Bloker reasonably believed that there had been a confrontation between the two individuals. Nathem described the other person involved in the incident and the other person's vehicle, including a license plate number. The vehicle — which was registered to Defendant — was found a short distance away, and Defendant matched the description given by Nathem. Furthermore, when questioned by Bloker, Defendant admitted having a confrontation with a truck driver.

The details of the incident given by Nathem and Defendant differed significantly. Nathem claimed Defendant pointed a gun at him and threw a bottle at his truck, denting it. Defendant claimed that his truck was damaged when Nathem backed into it, and he then followed Nathem and confronted him. According to Defendant, Nathem claimed he had a gun, so Defendant drove away. The physical evidence supported Nathem's version of the events. Officer Bloker observed a broken bottle and a dent in Nathem's truck, consistent with Nathem's version of the incident. While Defendant claimed that his vehicle was damaged when the truck driver backed into it, no damage could be seen by officers.

I believe the totality of the circumstances established that there was a "fair probability" that evidence of a crime (the gun) would be found in Defendant's vehicle.

*United States v. Rodriguez*, 414 F.3d 837, 843 (8th Cir. 2005) ("Probable cause exists when, given the totality of the circumstances, a reasonable person could believe that there is a fair probability that contraband or evidence of a crime would be found in a particular place."). The incident occurred a short period of time prior to the seizure, and the vehicle was found nearby. It is unlikely that Defendant would have disposed of the gun between the time of the incident and the seizure. In exercising their common sense, the officers could reasonably believe that Defendant displayed a gun during the incident, and that it was still in his vehicle. *Kennedy*, 427 F.3d at 1141. Based on all of the facts known to the officers, I believe there was probable cause to seize the vehicle. *United States v. Bach*, 400 F.3d 622, 628 (8th Cir. 2005) ("Probable cause is not a rigidly defined concept, for it depends on the totality of the circumstances and the specific facts in a given situation.").

## IV. RECOMMENDATION

For the reasons set forth above, I respectfully recommend that the Motion to Suppress (docket number 12) filed by the Defendant be **DENIED**. The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court. *The parties are reminded that pursuant to Local Rule 72.1, "[a] party asserting such objections must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections." Accordingly, if the parties are going to object to this Report and Recommendation, they must promptly order a transcript of the hearing held on January 9, 2014.*

DATED this 22nd day of January, 2014.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA